■ BENJAMIN MESSINGER, Appellant, v GIRL SCOUTS OF THE U.S.A., Respondent, et al., Defendant. [792 NYS2d 56]—

Judgment, Supreme Court, New York County (Leland De-Grasse, J.), entered January 7, 2004, dismissing the complaint and bringing up for review an order of the same court and Justice, entered December 31, 2003, which granted defendant's motion for summary judgment, unanimously affirmed, with costs.

A party alleging religious discrimination in employment under the New York State and New York City Human Rights Laws carries the initial burden of establishing a prima facie case. To meet this burden, an employee must show that he is a member of a protected class, was qualified to hold the position, was terminated from employment or suffered another adverse employment action, and the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination (see Forrest v Jewish Guild for Blind, 3 NY3d 295, 305 [2004]). To prevail on a summary judgment motion, the employer must demonstrate either the employee's failure to establish every element of intentional discrimination, or—having offered legitimate, nondiscriminatory reasons for the challenged action—the absence of a material issue of fact as to whether its explanations were pretextual (id.; see also Ferrante v American Lung Assn., 90 NY2d 623, 629-630 [1997]).

Here, defendants demonstrated that plaintiff could not establish a prima facie case. An adverse employment action requires a materially adverse change in the terms and conditions of

employment. "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' . . . 'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation' " (*Galabya v New York City Bd. of Educ.*, 202 F3d 636, 640 [2d Cir 2000], quoting *Crady v Liberty Natl. Bank & Trust Co. of Ind.*, 993 F2d 132, 136 [7th Cir 1993]).

Defendants proved that there was only an alteration of plaintiff's responsibilities. Even while working on the "WINCAS" project team, plaintiff performed tasks within his job description. His removal from the WINCAS team was neither a termination of employment nor a demotion. Plaintiff retained his work space, title, job hours and salary, and continued to perform functions consistent with his job title. Thereafter, plaintiff was authorized to answer his colleagues' questions related to the project, and he later returned to WINCAS training. While an arbitrator found that defendants' removal of plaintiff from the WINCAS team was handled poorly, and ordered the reference to that removal excised from his 1999 review, she expressly found no evidence of discrimination.

After the reorganization of the Girl Scouts' IT department, plaintiff received a new title comparable to his old one—one of his second tier choices—and a merit raise. The argument that his removal "could have disadvantaged him" and that his first negative review in 1999 "might well have resulted in more negative consequences" is speculative. In this regard, the negative comments in the 1999 review were not an adverse employment action (*cf. Hawana v City of New York*, 230 F Supp 2d 518, 528 [SD NY 2002]). The arbitrator did reframe certain comments in that review, but in doing so she actually sustained plaintiff's overall evaluation. Concur—Andrias, J.P., Sullivan, Williams, Gonzalez and Catterson, JJ.