■ KEVIN DICKERSON et al., Respondents, v HEALTH MANAGEMENT CORPORATION OF AMERICA, Appellant. [800 NYS2d 391]—

Order, Supreme Court, Bronx County (Nelson S. Roman, J.), entered November 4, 2004, which denied defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

Defendant is a medical management company that oversees administrative, personnel and other nonmedical functions for medical offices, including radiology and MRI scanning centers, known as "sites." Each site is staffed with marketing representatives who focus solely on marketing services for the sites, and site directors who, in addition to having the responsibilities of a marketing representative, are also responsible for managing and overseeing the personnel and other functions of the sites on a day-to-day basis.

In September 2000, plaintiff, an African-American, applied for both marketing representative and site director positions in response to an advertisement placed by defendant. Thomas Gemma, defendant's regional sales director, and Xavier Rodrigo, defendant's vice-president of operations, interviewed and subsequently hired plaintiff as a marketing representative that month. Gemma promoted plaintiff to site director in November 2000. On July 2, 2001, Gemma and Rodrigo terminated plaintiff's employment, citing absenteeism, tardiness and repeated failure to call in to his sites as reasons for the termination.

In March 2002, plaintiff commenced an action alleging that he was terminated because of his race in violation of Executive Law § 296 (1) (a) and New York City Administrative Code § 8-107 (1) (a). After completion of discovery, defendant moved for summary judgment dismissing the complaint. In support of the motion, defendant submitted affidavits from Gemma, Rodrigo and Rodrigo's assistant, Debbie Farrell. All three affidavits detailed plaintiff's chronic lateness, absenteeism and failure to call in to his sites, despite repeated admonitions by Gemma and Rodrigo concerning his deficiencies in this area. Attendance and time clock records were also submitted in support of the motion.

In response, plaintiff claimed the attendance records were manipulated, although he submitted no proof of this claim. He also submitted affidavits of two former employees of defendant, both African-Americans, who stated that defendant's employees demonstrated a lack of respect toward African-American employees in general, that Gemma had humiliated plaintiff in front of other employees, and that only African-American employees were required to punch a time clock. In rebuttal, Gemma denied humiliating plaintiff. With respect to the time clock, Gemma related that while not all sites had these clocks, all employees (including directors) at the sites that had them were required to clock in.

Although the IAS court found that defendant's evidence

regarding plaintiff's absenteeism and tardiness was sufficient to establish a legitimate, nondiscriminatory explanation for his termination, the affidavits of the former employees raised material issues of fact sufficient to deny defendant's motion. We reverse.

A plaintiff alleging racial discrimination in employment has the initial burden of establishing a prima facie case. To meet this burden, plaintiff must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he was terminated from employment or suffered an adverse employment action, and (4) the termination or other adverse action occurred under circumstances giving rise to an inference of discrimination (*see Forrest v Jewish Guild for Blind*, 3 NY3d 295, 305 [2004]). If plaintiff meets this burden, the employer must produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason (*see St. Mary's Honor Center v Hicks,* 509 US 502 [1993]). If the employer produces such evidence, plaintiff must then show that the proffered reason was merely a pretext for discrimination by demonstrating *"both* that the reason was false, *and* that discrimination was the real reason"* (*id.* at 515; *see also Brennan v Metropolitan Opera Assn.*, 284 AD2d 66, 71 [2001]).

To prevail on a summary judgment motion, an employer "must demonstrate either the employee's failure to establish every element of intentional discrimination, or—having offered legitimate, nondiscriminatory reasons for the challenged action—the absence of a material issue of fact as to whether its explanations were pretextual" (*Messinger v Girl Scouts of U.S.A.,* 16 AD3d 314, 314 [2005]; *see also Forrest,* 3 NY3d at 305).

Defendant's evidence regarding plaintiff's absenteeism and tardiness was sufficient to establish a legitimate, nondiscriminatory explanation for his termination. Plaintiff offered no evidence that defendant's claims in this regard were false, contrived or pretextual (*see Best v Peninsula N.Y. Hotel Mgt.*, 309 AD2d 524 [2003]).

The IAS court found that material issues of fact were raised by the affidavits of the former employees concerning the requirement to punch a time clock and the disparaging remarks made by Gemma. However, these factual issues are not relevant to the question of pretext. Even assuming that plaintiff was unfairly singled out to punch a time clock or that disparaging remarks were made about him, these facts, while offensive, do not negate defendant's evidence concerning his tardiness and absenteeism. These affidavits lack probative value because they

fail to assert facts from which personal knowledge of the reasons for plaintiff's termination may be inferred (*see Castro v New York Univ.,* 5 AD3d 135 [2004]). Conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment (*Best,* 309 AD2d 524 [2003]).

Moreover, "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer" (*Proud v Stone,* 945 F2d 796, 797 [4th Cir 1991]; *see also Brennan,* 284 AD2d at 71). This "same actor inference" is more compelling where the termination occurs within a relatively short time after the hiring (*see Campbell v Alliance Natl. Inc.* 107 F Supp 2d 234, 248 [SD NY 2000]).

Here, the same individuals who hired plaintiff (Gemma and Rodrigo) made the decision to terminate him, all within a time span of nine months, which "strongly suggest[s] that invidious discrimination was unlikely" (*Brennan,* 284 AD2d at 71, quoting *Grady v Affiliated Cent., Inc.,* 130 F3d 553, 560 [2d Cir 1997], *cert denied* 525 US 936 [1998]). Plaintiff produced no evidence to rebut this inference. Concur—Friedman, J.P., Nardelli, Williams, Gonzalez and Sweeny, JJ. [*See* 5Misc 3d 1011(A), 2004 NY Slip Op 51330(U) 92004).]