Williams, J.
 

 The sole question is whether the protest, signed by more than 51 per cent of the qualified electors of Swan Creek Township Local School Dis
 
 *109
 
 trict, was legally effective to prevent the adoption of the plan of reorganization.
 

 Section 4831, General Code (120 Ohio Laws, 509), providing for a connty plan of territorial organization, then read as follows:
 

 “On or before the first Monday in March in the year 1944 and on or before the first Monday in March in every even numbered year thereafter each county board of education shall, by a majority vote of its full membership, adopt a plan of territorial organization of the school districts under its supervision. Such plan of organization shall prescribe such transfers of territory, elimination of local school districts, and creation of new school districts which, in the opinion of the county board of education, will provide a more economical or efficient county school system.”
 

 Section 4831-3, General Code (120 Ohio Laws, 510), provided for a protest against such a plan and read thus:
 

 “Any group of electors, qualified to vote in territory within the territorial boundary lines- of the county school district, may, at any time prior to the second Monday in April following the adoption of the plan of organization by the county board of education, file with the county board of education a protest relating to the change or failure to change boundary lines of any local school district within the county school system, wherein said electors reside.
 

 ‘ ‘ Such protest shall be in writing, signed by the electors making such protest, specifically setting forth.the nature of the protest together with the reasons therefor and shall be in duplicate.
 

 “If such protest so filed be signed by 51% or more of the electors of the local school district or districts so affected, then the county board of education and the
 
 *110
 
 Superintendent of Public Instruction shall not have the authority to adopt the plan of reorganization proposed so far as the said local school district or districts protesting are concerned. ’ ’
 

 We must also consider the bearing of Section 4831-13, General Code (120 Ohio Laws, 513), which provided :
 

 ‘ ‘ If the county board 'of education deems it advisable to transfer territory from a local school district within the county school district to an adjoining county school district or to an adjoining city or exempted village school district, or if a petition, signed by 75 per cent of the qualified electors residing within the territory proposed to be transferred, requests such a transfer, and such petition is filed with the county board of education on or before March first in an even numbered year, the proposed transfer of territory shall be included in the forthcoming plan of territorial organization of the school districts to be made and adopted under the provisions of Section 4831 of the General Code.”
 

 The above quoted sections were amended October 12, 1945.
 

 Although there was no mention of a protest in the last-quoted section, there was nothing in the language employed that would be inconsistent with a protest so long as the board acted on its own initiative and without a petition requesting a transfer of territory. It is not now necessary to determine the effect of such a petition, had one been filed in the instant case. Section 4831-13 and the other sections of the General Code, when construed together, gave the right to file a protest to a county plan of territorial organization (or reorganization) insofar as such plan related to making or .failing to make a change in boundary lines.
 

 
 *111
 
 The foregoing sections, effective September 16,1943, were adopted as a part of the recodification of the school laws of Ohio, and at the same time, Section 4736, ■General Code (108 Ohio Laws, pt. 1, 707), was repealed. By reason thereof it is urged that Section 4831-3 is to be treated as a substitute for Section 4736, and therefore should be given a similar construction.
 

 Section 4736, General Code, as in force at the time of its repeal, provided in substance that the action of a county board of education in creating a school district from one or more school districts or parts thereof should not take effect “if a majority of the qualified electors residing in the territory affected” should file with the board a written remonstrance against the order of creation. In
 
 Durst
 
 v.
 
 State, ex rel. TVatmough,
 
 119 Ohio St., 262, 163 N. E., 495, the record disclosed that a new district had.been formed from a dissolved district and two tracts of land each carved from a different township. It was held that Section 4736, General Code, required that the remonstrance should contain a majority of all the electors of the dissolved district and the two townships.
 

 The language used in Section 4831-3, General Code, with respect to a protest differed materially from that used in Section 4736 with respect to a remonstrance and necessarily implied a wholly different legislative intent. In every transfer of territory at least two districts are involved. A protest was required to be signed by the statutory percentage of “electors of the local school district or districts ’ ’ affected by the plan. The use of the singular and the plural in the disjunctive compels the conclusion that 51 per cent or more of the electors of any local school district affected or of each of the districts affected could properly sign and file a protest which would be effective to prevent the plan
 
 *112
 
 from becoming operative as to tbe protesting district or districts.
 

 For tbe reasons given tbe protest was in accord with tbe statutory provisions, and tbe judgment of tbe Court of Appeals should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Bell, Turner, Matthias and Hart, JJ., concur.